**IN THE COURT OF COMMON PLEAS**
**HAMILTON COUNTY, OHIO**

A 2 3 0 0 7 9 5

| | | |
|---|---|---|
| **INTEGRITY EXPRESS LOGISTICS, LLC**<br>4420 Cooper Rd.<br>Cincinnati, OH 45242,<br><br>Plaintiff,<br><br>v.<br><br>**BRADFORD R. BORSTELMANN**<br>1990 Castille Dr.<br>Dunedin, FL 34698<br><br>**AND**<br><br>**FREIGHT TEC MANAGEMENT GROUP, INC.**<br>c/o Steve D. Van Otten, Registered Agent<br>190 N. Main St. #225<br>Bountiful, UT 84011<br><br>Defendants. | : | Case No. ________________<br><br>Judge ________________ |

COPY FILED
CLERK OF COURTS
HAMILTON COUNTY

FEB 24 2023

COMMON PLEAS COURTS

**VERIFIED COMPLAINT FOR PRELIMINARY INJUNCTION, PERMANENT INJUNCTION, AND DAMAGES**

For its Complaint against defendants Bradford R. Borstelmann ("Mr. Borstelmann") and Freight Tec Management Group, Inc. ("Freight Tec"), plaintiff Integrity Express Logistics, LLC ("IEL") states as follows:

**NATURE OF THE ACTION**

1. This case involves a former IEL employee who, after the close of business on his last day with IEL, immediately started soliciting IEL's customers—blatantly contravening and disregarding an applicable restrictive covenant—and is presently working for an employer with indisputable knowledge of the employee's contractual obligations with IEL. As a result, IEL seeks preliminary and permanent injunctive relief, and damages for breach of contract, breach of

**EXHIBIT B**

fiduciary duty, and misappropriation of trade secrets against Mr. Borstelmann, the former employee of IEL, and for tortious interference with contract and misappropriation of trade secrets against Mr. Borstelmann's new employer, Freight Tec. Unless restrained and enjoined, Mr. Borstelmann and Freight Tec will cause irreparable harm to IEL through deliberate breaches of contractual and other lawful duties owed to IEL and by virtue of their misappropriation of IEL's trade secrets.

## PARTIES

2. IEL is an Ohio limited liability company that is engaged in the business of providing freight brokerage services throughout the United States.

3. Mr. Borstelmann is a resident of the state of Florida and was employed by IEL in its Tampa, Florida office until he resigned on February 7, 2023 and accepted a position as an agent or employee of defendant, Freight Tec.

4. Freight Tec is a Utah corporation with its principal place of business in Bountiful, Utah, which, like IEL, provides freight brokerage services throughout the United States. Upon information and belief, Freight Tec hired Mr. Borstelmann as an agent or employee on or about February 8, 2023.

## JURISDICTION AND VENUE

5. This Court possesses subject matter jurisdiction because the amount in controversy exceeds the minimum jurisdictional threshold for this Court.

6. The Non-Competition, Non-Solicitation, and Confidentiality Agreement (the "Agreement") Mr. Borstelmann executed in connection with his employment with IEL contains a choice-of-forum clause, which provides:

> Any actions or proceedings instituted under this Agreement with respect to any matters arising under or related to this Agreement, shall be brought and tried only



EXHIBIT B

> in courts located in the State of Ohio and by entering into this Agreement, Employee consents to the jurisdiction of both the federal and state court systems in Ohio. Employee expressly waives his right to cause any such actions or proceedings to be brought or tried elsewhere.

7. Therefore, this court has personal jurisdiction over Mr. Borstelmann and venue is appropriate in this Court because IEL's claims in this action arise under and relate to the Agreement.

8. In addition, this Court has jurisdiction over Freight Tec because, among other reasons, defendant Freight Tec transacts business in this state[1] and is causing tortious injury in this state, committed with the purpose of injuring persons, and Freight Tec might reasonably have expected that IEL would be injured thereby in Ohio.

## FACTUAL ALLEGATIONS

### *The Nature of IEL's Business and Confidential Information*

9. IEL provides freight brokerage services throughout the continental United States. IEL brings together loads of freight for producers, suppliers, manufacturers, and other entities ("Customers") with over-the-road motor transportation companies available to move the freight ("Carriers").

10. IEL has spent, and continues to spend, a substantial amount of time and resources obtaining and maintaining both Customers and Carriers.

11. At considerable time and expense, IEL also trains its employees, including Logistics Account Executives, on the performance of freight brokerage services, including training on IEL services, Customers, Customer evaluations, Customer credit authority, Carriers, Carrier evaluations, proprietary software, and general operations.

---

[1] *See e.g.*, https://freight-tec.com/loads/ (detailing available loads, including some originating in and/or destined for Ohio).



EXHIBIT B

12. The freight brokerage service business is highly competitive and IEL has expended substantial resources to create and protect highly confidential information necessary to build and maintain a significant business presence and to effectively compete against other freight brokerage services.

***Mr. Borstelmann is Hired by IEL and Executes a Non-Competition, Non-Solicitation, and Confidentiality Agreement***

13. On or about March 7, 2022 Mr. Borstelmann was hired by IEL as a Logistics Account Executive in its Tampa, Florida offices.

14. During his employment, IEL provided Mr. Borstelmann with extensive training on IEL's services, pricing structure, sales strategies, Customers, Carriers, proprietary software, and general operations.

15. In his capacity as a Logistics Account Executive for IEL, Mr. Borstelmann developed significant knowledge of and contacts with Customers, Carriers, and other persons doing business with IEL, which is essential to generating and maintaining business. Indeed, one of the key aspects of Mr. Borstelmann's role involved cultivating relationships with Customers and Carriers so that IEL could continue to develop and grow its Customer and Carrier lists and adequately service its Customers' needs.

16. During his employment, Mr. Borstelmann had access to and became intimately familiar with extremely sensitive information pertaining to IEL's services, its personnel, its Customer lists, its methods, procedures and practices, its commission and fee rates, its sales figures and other business affairs, proprietary software, and its strategic business forecasts and plans, including marketing strategies and targets. That information is highly confidential and proprietary in nature and is protected by IEL as a valuable business asset.



EXHIBIT B

17. Under IEL's tutelage, and in light of being entrusted with IEL's trade secrets, Mr. Borstelmann became a successful Logistics Account Executive, generating substantial margins, revenue, and commissions.

18. In consideration for his employment, on or about March 6, 2022, Mr. Borstelmann executed the Agreement. A true and accurate copy of the Agreement is attached hereto as **Exhibit 1.**

19. Therein, Mr. Borstelmann agreed not to compete with IEL for one year after his separation from the company:

> Non-Competition. In order to protect the legitimate business interests of the Company, Employee covenants and agrees that during the Term and except as expressly provided here, Employee shall not, directly or indirectly:
>
> (a) seek or accept employment or other work with any person, entity, or business similar to, or which directly or indirectly is competitive with the Company within a 150 mile radius from any of the Company's offices and within a 150 mile radius from the greater metropolitan area of Chicago, Illinois and Findlay, Ohio (the "Restricted Territory");
>
> (b) conspire, plan or otherwise agree with any person, entity or business to organize or develop any business or entity that directly or indirectly is competitive with, or engages in business similar to, the Company within the Restricted Territory;
>
> (c) own, manage, operate, control, be employed by, participate in or be connected in any manner with the ownership, management, operation or control of any person, entity or business similar to, or which directly or indirectly is competitive with, the business of Company with the Restricted Territory; or
>
> (d) divert or attempt to divert any business of Company within the Restricted Territory.

*Id.* at ¶ 2.

20. Mr. Borstelmann also agreed that for one year after his employment he would not solicit Customers or Carriers from IEL:

> Non-Solicitation of Business. Employee shall not, during the Term, directly or indirectly, solicit, contact, seek business from or approach any person or entity which is or was an account, client or customer of the Company on behalf of any person or entity which competes or engages in business similar to the Company within the Restricted Territory.





*Id.* at ¶ 3.

21. Mr. Borstelmann further agreed not to disclose, or make use of IEL's confidential information for his own benefit, or the benefit of any other person or entity:

> Confidential Information. In the course of employment with the Company, the Employee acknowledges that Employee will have access to confidential information and trade secrets, as those terms are defined by Ohio law, including, but not limited to, customer lists/data, financial information, company operations, pricing, business/marketing strategies, training information/materials, selling practices, methods, and techniques, and sales information ("Confidential Information"). Except as required by Employee's duties at the Company, the Employee agrees, while employed by the Company and thereafter, irrespective of the reason for termination, not to directly or indirectly: (a) reveal or disclose the Company's Confidential Information or trade secrets to any person or entity; or (b) make use of the Company's Confidential Information or trade secrets for Employee's own benefit or the benefit of any other person or entity, without the prior written consent of the Company.

*Id.* at ¶ 5.

22. The Agreement provides that any breach by Mr. Borstelmann "will result in material and irreparable injury to the Company for which there is no adequate remedy of law and that it would not be possible to measure damages for such injury precisely. In the event of such a breach or threat thereof, the Company shall have the right to, without the posting of a bond or other security,[] in addition to money damages, a temporary restraining order, preliminary injunction or permanent injunction restraining [Mr. Borstelmann] from engaging in the activities prohibited by this Agreement, or any other relief as may be appropriate in law or equity or required for specific enforcement of the covenants set forth in this Agreement." *Id.* at ¶ 8.

***Mr. Borstelmann Breaches the Agreement by Competing with IEL in the Tampa, Florida Area, Soliciting IEL Customers, and Misappropriating IEL's Trade Secrets***

23. On January 24, 2023, Mr. Borstelmann filed electronic articles of organization for a Florida limited liability company named BRBTL LLC ("BRBTL"). A true and accurate copy of BRBTL's articles of incorporation are attached hereto as **Exhibit 2**.



EXHIBIT B

24. BRBTL's principal office is located at 1990 Castille Dr., Dunedin FL, 34968, which is approximately 16.3 miles from IEL's Tampa offices. Upon information and belief, BRBTL is an agent of, or is otherwise associated with, Freight Tec.

25. On February 7, 2023, Mr. Borstelmann resigned from his position with IEL and his employment was terminated.

26. Mr. Borstelmann wasted no time breaching the Agreement. Indeed, right after close of business at 5:04 PM on February 7, 2023, Mr. Borstelmann sent an email to an IEL Customer stating, "*Attached are the documents you requested. Please let me know if you guys require anything else.* ***I might be able to start booking freight again as early as Thursday afternoon but will let you know the moment I'm back in business. Thanks again for working with me I really appreciate it. I'm here if you need help with a rate or anything else in the meantime.***" (Emphasis added). The Customer then asked his or her colleague if BRBTL could be set up as a new hauler. A true and accurate copy of Mr. Borstelmann's email correspondence soliciting an IEL customer on February 7, 2023 is attached hereto as **Exhibit 3**.

27. On February 8, 2023 at 7:43 AM, Mr. Borstelmann sent an email from the address 'BRBTL@Freight-Tec.com' to another one of IEL's Customers:

> I decided to pull the trigger and make a move. I told Integrity my plan to resign yesterday and they told me to just to leave. I had a sneaky feeling this might happen so I made sure all my freight was booked/taken care of ahead of time. ***I'm using this week to get all of my customers setup here with Freight Tec so we can [do] business as usual again next week. Absolutely nothing will change how we were doing things. I'll have the same rates, provide the same updates, etc.*** I will call you later to chat a bit more.

A true and accurate copy of Mr. Borstelmann's February 8, 2023 email soliciting an IEL customer is attached hereto as **Exhibit 4**.



EXHIBIT B

28. On that same day, at 2:02 PM, Mr. Borstelmann received an email from a different IEL customer forwarding correspondence from a Freight Tec representative who identified herself as an "Accounts Receivable Rep" seeking to set-up a Freight Tec account with an IEL Customer. The IEL Customer indicated that it was "*[i]nteresting they are asking all the same questions that we put on the link you sent yesterday.*" A true and accurate copy of the email correspondence sent to Mr. Borstelmann on February 8, 2023 from an IEL customer is attached hereto as **Exhibit 5**.

29. In light of Mr. Borstelmann's employment or association with a competitive freight brokerage firm, in the Tampa area and within one-year following the termination of his employment with IEL in addition to his solicitation of IEL customers, IEL, on February 13, 2023 sent Mr. Borstelmann a letter (the "February 13 Letter") reminding him of his obligations pursuant to the Agreement and demanding that he cease his actions violating the same because, among other reasons:

> It has come to our attention that you have commenced employment with a company that provides brokerage freight services and is directly competitive with, or engages in business similar to, Integrity in violation of the Agreement. In addition, your role within said company, ***Freight Tec***, is such that ***you are engaged*** in competition with Integrity and/or overseeing competition with Integrity. **You have solicited, by email, numerous existing IEL customers since your resignation on February 7, 2023.** These actions clearly violate your Agreement with Integrity.

A true and accurate copy of the February 13 Letter, excluding the Agreement enclosed therein, is attached hereto as **Exhibit 6**.

30. In the February 13 Letter, IEL requested that, on or before February 21, 2023, Mr. Borstelmann, or his counsel, provide an explanation of how his current employment does not violate his legal obligations to IEL. IEL has yet to receive a response from Mr. Borstelmann.

31. Pursuant to the Agreement, Mr. Borstelmann is prohibited from competing with IEL, soliciting business from IEL's Customers and Carriers, and soliciting IEL's employees for one year following his separation from IEL on February 7, 2023. Mr. Borstelmann further



EXHIBIT B

acknowledged, in Paragraph 5 of the Agreement, that while working for IEL, he may acquire confidential and proprietary information, which he was not to disclose or use for his benefit, or for the benefit of any other entity, including BRBTL or Freight Tec.

32. As an employee of Freight Tec or by virtue of his operation of BRTBL in association with Freight Tec, combined with his intimate knowledge of IEL's confidential and proprietary business information and trade secrets, Mr. Borstelmann is in a position to misappropriate and will inevitably disclose such information.

33. Upon information and belief, Mr. Borstelmann has engaged in a purposeful course of conduct to unjustly enrich himself by using skills, contacts, business relationships, and knowledge developed by IEL.

34. Upon information and belief, Mr. Borstelmann intends, unless restrained, to continue to compete with IEL and to unjustly enrich himself by using the skills, contacts, business relationships, and knowledge developed by IEL to the competitive disadvantage of IEL.

***Freight Tec Intentionally Procures the Mr. Borstelmann's (and Other Former IEL Employees') Breaches of the Agreement***

35. Freight Tec's pattern of intentionally interfering with IEL's Agreements with its former employees dates back to before Mr. Borstelmann left IEL's employ.

36. In early October 2022, Freight Tec recruiters sent IEL employees messages stating that they were about to "*sign 2 former Integrity Sales reps*" which would total four former IEL employees with Freight Tec now. True and accurate copies of messages from Freight Tec recruiters to IEL employees are attached as **Exhibit 7**.

37. In one instance on October 5, 2022, after an IEL employee told a Freight Tec recruiter that he would have to sit out a year in light of his non-compete with IEL, the Freight Tec



EXHIBIT B

recruiter stated "*we've had agents get around [non-competes].*" A true and accurate copy of the October 5, 2022 text exchange is attached hereto as **Exhibit 8**.

38. In response to Freight Tec solicitations of IEL's employees and to protect its confidential information, IEL sent a letter to Freight Tec on or about October 18, 2022 (the "October 18 Letter") informing Freight Tec that "***[a]ll IEL employees engaged in any sales related activity are bound by the terms and obligations of the Agreement***," and enclosing a copy of the Agreement therein. A true and accurate copy of the October 18 Letter is attached hereto as **Exhibit 9**.

39. Because IEL could not ascertain the identity of the four employees referenced in the recruiters' messages, it asked Freight Tec for that information, but Freight Tec refused to provide it.

40. As a result, IEL filed a petition for discovery in this Court, fashioned *Integrity Express Logistics, LLC v. Freight Tec Management Group, Inc.*, Case No. A 2204680, on December 22, 2022 pursuant to Civ. R. 34(D) and R.C. 2317.48.

41. In its petition for discovery, IEL stated, "*To ensure that Integrity's trade secrets and confidential information are protected, Integrity's Customer facing employees, in consideration for their employment, execute the Agreements.*" *See IEL v. Freight Tec Management Group, Inc.*, Petition at ¶ 10. IEL also attached the form agreement that its customer facing employees, including Mr. Borstelmann, sign as a matter of course to its petition for discovery.

42. Freight Tec refused to provide IEL the information it needed to prepare a complaint and, instead, opted to file a motion to dismiss IEL's petition on the grounds of lack of personal jurisdiction and failure to state a claim on February 14, 2023. *See generally* Dkt.



EXHIBIT B

43. Despite indisputable knowledge that IEL's former employees, including Mr. Borstelmann, are subject to the restrictive covenants provided above, Freight Tec procured Mr. Borstlemann's breaches of his Agreement on or about February 8, 2023 by virtue of his employment and/or association with Freight Tec.

**FIRST CLAIM FOR RELIEF**
**(Breach of Agreement against Mr. Borstelmann)**

44. IEL incorporates the allegations of the foregoing paragraphs as if fully set forth herein.

45. For consideration of employment with IEL, Mr. Borstelmann entered into the Agreement with IEL.

46. The Agreement is reasonable and enforceable.

47. Mr. Borstelmann has breached the Agreement by, among other things, starting BRBTL and directly competing with IEL by virtue of his association and/or employment with Freight Tec, in addition to directly soliciting business from IEL's Customers and Carriers.

48. Upon information and belief, Mr. Borstelmann is disclosing or inevitably will disclose IEL's confidential information for his benefit, the benefit of BRBTL, and/or for the benefit of Freight Tec.

49. IEL has fully complied with the terms of the Agreement.

50. Mr. Borstelmann's breach of the Agreement has caused, and will continue to cause, IEL to sustain substantial monetary losses and other immediate, substantial and irreparable harm for which there is no adequate remedy at law.

**SECOND CLAIM FOR RELIEF**
**(Breach of Fiduciary Duty Against Mr. Borstelmann)**

51. IEL incorporates the allegations of the foregoing paragraphs as if fully set forth herein.





52. Mr. Borstelmann owed fiduciary duties to IEL by virtue of his position as an employee of IEL and due to the confidential information and trade secrets shared with him for use on behalf of IEL.

53. Mr. Borstelmann's fiduciary relationships imposed duties of good faith, loyalty, and honesty upon him.

54. By competing with IEL and by taking, retaining, using and/or disclosing confidential information and trade secrets belonging to IEL, Mr. Borstelmann has breached his fiduciary duty, to the injury and damage of IEL, and will continue to do so irreparably harm IEL unless he is restrained and enjoined.

**THIRD CLAIM FOR RELIEF**
**(Misappropriation of Trade Secrets Against Mr. Borstelmann)**

55. IEL incorporates the allegations of the foregoing paragraphs as if fully set forth herein.

56. The information IEL identifies above, including, but not limited to, information pertaining to its Customers, Carriers, its commission and fee rates, proprietary software, methods, procedures and practices, sales figures and sales training, and other business affairs are IEL's trade secrets subject to protection under the Ohio Uniform Trade Secrets Act, R.C. 1333.61, *et seq.*

57. This confidential business information is unknown to the general public and to the freight brokerage industry, generally, and is not readily ascertainably by proper means by other persons who can obtain economic value from its disclosure. It has been developed over time and at IEL's expense for the exclusive benefit of IEL, and IEL has taken reasonable steps to protect this information from disclosure. It constitutes a valuable business asset of independent value.



EXHIBIT B

58. As an employee of IEL, Mr. Borstelmann had access to and knowledge of this confidential business information. Indeed, in the Agreement, Mr. Borstelmann acknowledged that he would become familiar with such confidential information. *See* Agreement, Ex.1 at ¶ 5.

59. Mr. Borstelmann has misappropriated and, unless restrained, will continue to misappropriate trade secrets of IEL for his own use and for the use of Freight Tec to compete with IEL. Alternatively, by virtue of his employment or association with Freight Tec, Mr. Bosrtelmann will inevitably disclose IEL's trade secrets.

60. Through his acts and conduct, Mr. Borstelmann has violated and is continuing to violate the Ohio Uniform Trade Secrets Act and Ohio common law.

61. Through his acts and conduct, Mr. Borstelmann has unjustly enriched himself and has caused and is continuing to cause IEL actual and potential loss of business opportunities, loss of good will in the freight brokerage industry, and loss due to legal expenses and costs, including attorneys' fees, or will do so unless he is restrained.

62. Mr. Borstelmann's misappropriation of IEL's trade secrets has caused, and will continue to cause, other immediate, substantial and irreparable harm to IEL, for which there is no adequate remedy at law.

**<u>FOURTH CLAIM FOR RELIEF</u>**
**(Tortious Interference with Contract against Freight Tec)**

63. IEL incorporates the allegations of the foregoing paragraphs as if fully set forth herein.

64. As alleged above, a valid and binding contractual relationship exists between IEL and Mr. Borstelmann.



EXHIBIT B

65. By virtue of the October 18 Letter, IEL's filing of the petition for discovery, and other communications between IEL and Freight Tec, or the representatives thereof, Freight Tec has knowledge of Mr. Borstelmann's contractual obligations.

66. Indeed, Freight Tec has exhibited a practice of hiring former IEL employees despite their contractual obligations to IEL.

67. By employing Mr. Borstelmann in the Tampa, Florida area, within 150 miles of IEL's Tampa office, Freight Tec has intentionally procured Mr. Borstelmann's breaches of the Agreement.

68. Freight Tec's actions are not justified.

69. Freight Tec's tortious conduct has caused, and will continue to cause, Integrity to sustain substantial monetary loss and other immediate, substantial and irreparable harm for which there is no adequate remedy at law.

**FIFTH CLAIM FOR RELIEF**
**(Misappropriation of Trade Secrets against Freight Tec)**

70. IEL incorporates the allegations of the foregoing paragraphs as if fully set forth herein.

71. Freight Tec has, or is about to, unlawfully convert and misappropriate IEL's trade secrets to its own use and benefit in violation of the common law of Ohio and R.C. 1333.61 *et seq*.

72. Freight Tec's employment of Mr. Borstelmann will, by its very nature, inevitably result in the unlawful disclosure of IEL's trade secrets, which IEL endeavors to protect through reasonable steps.

73. As a proximate result of Freight Tec's actions, IEL has suffered damages in an amount which cannot be reasonably ascertained at present. IEL is entitled to damages as a result



EXHIBIT B

of Freight Tec's actions, including, but not limited to, compensatory damages, punitive damages, costs, and attorneys' fees.

74. Unless restrained by this Court, Freight Tec will continue its unlawful acts and IEL will be irreparably injured.

75. Freight Tec's misappropriation of IEL's trade secrets has caused, and will continue to cause, IEL to sustain substantial monetary losses and other immediate, substantial and irreparable harm for which there is no adequate remedy at law.

**RELIEF REQUESTED**

**WHEREFORE**, IEL demands preliminary and permanent injunctive relief, and judgment against the defendants as follows:

A. Pursuant to the First Claim for Relief preliminary and permanent injunctive relief restraining and enjoining Mr. Borstelmann from breaching the obligations of the Agreement to the extent deemed reasonable by the Court, including but not limited to restraining and enjoining Mr. Borstelmann from the following until February 7, 2024:

> (a) seeking or accepting employment, other work with any person, entity, or business similar to, or which directly or indirectly is competitive with Integrity within a 150 mile radius from any of the Integrity's offices and within the Restricted Territory, as defined in Exhibit 1, ¶ 2(a);
>
> (b) conspiring, planning, or otherwise agreeing with any person, entity or business to organize or develop any business or entity that directly or indirectly is competitive with, or engages in business similar to Integrity within the Restricted Territory;
>
> (c) owning, managing, operating, or controlling, being employed by, participating in or being connected in any manner with the ownership, management, operation or control of any person, entity or business similar to, or which directly or indirectly is competitive with, the business of Integrity within the Restricted Territory;
>
> (d) diverting or attempting to divert any business of Integrity within the Restricted Territory;





(e) soliciting, contacting, seeking business from, or approaching any person or entity which is or was an account, client or customer of Integrity on behalf of any person or entity which competes or engages in business similar to Integrity within the Restricted Territory;

(f) hiring, identifying for solicitation, soliciting, directly or indirectly, employees of Integrity for employment by any person or entity which competes with or engages in business similar to the business of Integrity within the Restricted Territory; and

(g) revealing or disclosing Integrity's confidential information or trade secrets, including but not limited to, customer lists/data, financial information, company operations, pricing, business/marketing strategies, training information/materials, selling practices, methods, and techniques, and sales information, to any person or entity, or making use of Integrity's confidential information or trade secrets for their own benefit of the benefit of any other person or entity, without the prior written consent of Integrity.

B. Pursuant to the First Claim for Relief, in addition to injunctive relief, judgment awarding IEL damages for breach of contract against Mr. Borstelmann in an amount exceeding $15,000, to be proven at trial.

C. Pursuant to the First Claim for Relief, in addition to injunctive relief, judgment awarding IEL its attorney fees and costs pursuant to Paragraph 9 of the Agreement against the Mr. Borstelmann.

D. Pursuant to the Second Claim for Relief preliminary and permanent injunctive relief restraining and enjoining Mr. Borstelmann from further breach of his fiduciary duties to IEL and, specifically, restraining and enjoining him from misappropriating IEL's business opportunities, confidential information and trade secrets; from solicitation of Integrity's existing and prospective Customers and Carriers; and from solicitation of Integrity's employees.

E. Pursuant to the Second Claim for Relief, in addition to injunctive relief, judgment awarding IEL damages for breach of fiduciary duties against Mr. Borstelmann in an amount exceeding $15,000, to be proven at trial.



EXHIBIT B

F. Pursuant to the Third Claim for Relief preliminary and permanent injunctive relief restraining and enjoining Mr. Borstelmann, and all others acting in concert or cooperation with him and having notice of such order, from:

> (a) obtaining, using, or disclosing any confidential information and trade secret information of IEL, including, but not limited to, information pertaining to IEL's client relationships, pricing, marketing, proprietary software, sales lists, customer lists, motor carrier lists, business strategy, and other business affairs;
>
> (b) obtaining or retaining any document or paper relating to confidential and trade secret information of IEL, including, but not limited to, documents constituting, referring to, or relating to IEL's client relationships, pricing, marketing, proprietary software, sales lists, customer lists, motor carrier lists, business strategy, and other business affairs.

G. Pursuant to the Third Claim for Relief, in addition to injunctive relief, judgment awarding IEL damages, in an amount to be determined exceeding $15,000, to be proven at trial, including, without limitation, an award of punitive or exemplary damages in an amount equal to three (3) times IEL's actual loss and Mr. Borstelmann's unjust enrichment.

H. Pursuant to the Fourth Claim for Relief permanent and preliminary injunctive relief restraining and enjoining Freight Tec from intentionally interfering with Mr. Borstelmann's, or any other former Integrity employees' contractual obligations with IEL.

I. Pursuant to the Fourth Claim for Relief, in addition to injunctive relief, judgment awarding IEL damages for tortious interference with contractual relationships against Freight Tec in an amount exceeding $15,000, to be proven at trial.

J. Pursuant to the Fifth Claim for Relief, preliminary and permanent injunctive relief restraining and enjoining Freight Tec, and all others acting in concert or cooperation with it and having notice of such order, from:

> (a) obtaining, using, or disclosing any confidential information and trade secret information of IEL, including, but not limited to, information pertaining to IEL's



EXHIBIT B

client relationships, pricing, marketing, proprietary software, sales lists, customer lists, motor carrier lists, business strategy, and other business affairs;

(b) obtaining or retaining any document or paper relating to confidential and trade secret information of IEL, including, but not limited to, documents constituting, referring to, or relating to IEL's client relationships, pricing, marketing, proprietary software, sales lists, customer lists, motor carrier lists, business strategy, and other business affairs.

K. Pursuant to the Fifth Claim for Relief, in addition to injunctive relief, judgment awarding IEL damages, in an amount to be determined exceeding $15,000, to be proven at trial, including, without limitation, an award of punitive or exemplary damages in an amount equal to three (3) times IEL's actual loss and Freight Tec's unjust enrichment.

L. Such other and further relief, including but not limited to damages, costs, pre-judgment and post-judgment interest, and attorney fees.

Respectfully submitted,

*/s/ J.B. Lind*
J.B. Lind (0083310)
Elizabeth A. Callan (0078969)
Daniel P. Shinkle (0099656)
VORYS, SATER, SEYMOUR AND PEASE LLP
301 E. Fourth Street, Suite 3500
Cincinnati, Ohio 45202
Phone: (513) 723-4000
Facsimile: (513) 852-7835
jblind@vorys.com
eacallan@vorys.com
dpshinkle@vorys.com

*Attorneys for Integrity Express Logistics, LLC*





**VERIFICATION**

I, Victoria Hershberger, certify that I am an authorized representative of Integrity Express Logistics LLC. I hereby certify that I have reviewed the Verified Complaint, have personal knowledge of the facts set forth in the Verified Complaint, and the statements contained therein are true to the best of my knowledge and belief.

INTEGRITY EXPRESS LOGISTICS, LLC

BY: [signature]
Human Resource Director

NOTARIAL SEAL STATE OF OHIO
BRANDI PETERS
Notary Public, State of Ohio
My Commission Expires 04-14-2024

Sworn to before me and subscribed in my presence this 24th day of February, 2023.

[signature: Brandi Peters]
Notary Public

My commission expires:
4-14-2024



EXHIBIT B