UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

INTEGRITY EXPRESS LOGISTICS, LLC,

    Plaintiff,

  v.                                      Case Nos. 1:23-cv-166
                                          JUDGE DOUGLAS R. COLE

BRADFORD R. BORSTELMANN, et al.,

    Defendants.

**OPINION AND ORDER**

This case stems from Defendant Freight Tec Management Group Inc.'s (Freight Tec) alleged poaching of Integrity Express Logistics, LLC's (Integrity) employees in violation of those employees' contractual agreements and Ohio and federal law. Integrity is based in Ohio, while Freight Tec is based in Utah. Freight Tec moves to dismiss (Doc. 17) Integrity's Amended Complaint (Doc. 10),[1] arguing that Ohio does not possess personal jurisdiction over it here. Integrity asks for jurisdictional discovery to establish facts which could support personal jurisdiction over Freight Tec. (Doc. 19). The Court finds that limited jurisdictional discovery is warranted and therefore **DENIES WITHOUT PREJUDICE** Freight Tec's motion to dismiss and will allow it to renew its motion after limited discovery.

---

[1] Freight Tec also moved to dismiss (Doc. 9) Integrity's original complaint (Doc. 6). Because Integrity amended its complaint, that motion is **DENIED** as moot.

## FACTUAL BACKGROUND[2]

Integrity is an Ohio limited liability company that provides freight brokerage services nationally. (Doc. 10, ¶ 4, #151). As a freight broker, Integrity hires employees who develop relationships with shipping carriers and use those relationships to generate and maintain business. (*Id.* ¶ 20, #155). Through their training, Integrity employees learn about Integrity's pricing structure, sales strategy, customer list, and general operations. (*Id.* ¶ 19, #155). Because of the sensitive nature of much of this information, Integrity requires its employees to sign confidentiality, non-solicitation, and noncompete agreements. (*Id.* ¶¶ 14–17, #153–55).

Freight Tec competes with Integrity, offering freight brokerage services throughout the country. (*Id.* ¶ 5, #152). Freight Tec is a Utah corporation with its principal place of business in Bountiful, Utah. (*Id.*).

According to Integrity, Freight Tec recruiters contacted Integrity's employees, asking them to leave Integrity and join Freight Tec as freight brokers. (*Id.* ¶¶24–25, #156). Freight Tec also allegedly offered to help the employees "get around" their non-compete agreements. (*Id.* ¶ 26, #156). Integrity learned about Freight Tec's recruiting after customers emailed Integrity indicating that former employees were pursuing their business on behalf of Freight Tec. (*Id.* ¶ 2, #151).

---

[2] The factual background comes from the allegations in Integrity's Complaint. Accordingly, the Court notes that these "facts" it recites here are not yet proven.

2

Although Integrity cannot identify them, it believes Freight Tec has recruited four of its former employees.[3] (*Id.* ¶ 6, #152, 218). This belief is based on two exhibits attached to its complaint. One is a screenshot of an instant message to an Integrity Employee, the other a screenshot of a text message to an Integrity employee. (*See id.* at #218–21). In the instant-messaging exhibit, an individual named "Jordan Reed" asks the anonymized Integrity employee, "How are things at Integrity? The reason I ask is because I'm about to sign 2 former Integrity sales reps this week which will total to 4 that are with us now." (*Id.* at #218). Integrity alleges that "Jordan Reed" is an agent of Freight Tec. (*Id.* ¶ 25, #156). The text-messaging exhibit depicts a text between "Jordan with Freight Tec" and an anonymized Integrity employee. (*Id.* at #221). In that text exchange, "Jordan" advises the employee that "[w]e've had agents get around [their non-compete agreements]." (*Id.*).

Integrity sent a cease-and-desist letter to Freight Tec on October 18, 2022, demanding that Freight Tec stop recruiting former Integrity employees in violation of their noncompete agreements. (*Id.* ¶ 30, #157, 223–25). It also asked Freight Tec to identify the four former Integrity employees that it recruited. (*Id.* ¶ 31, #157). Freight Tec refused. (*Id.*).

Integrity responded in two ways. First, it filed a petition for discovery under Ohio.Rev.Code § 2317.48 in the Ohio Hamilton County Court of Common Pleas. This statutory provision allows a party who is "unable to file his complaint" "without the

---

[3] Integrity did identify one other employee, Brad Borstelmann, whom it initially added as a defendant. (*Id.* ¶¶ 36–56, #158–62). Integrity dropped him as a defendant in its first amended complaint. (*Id.* at #150).

3

discovery of a fact from the adverse party" to file an action to obtain such discovery. *Id.* In the discovery action, Integrity sought information related to Freight Tec's recruitment of its former employees. (Doc. 10, ¶¶32–33, #158; Compl., *Integrity Express Logistics, LLC v. Freight Tec Mgmt. Grp. Inc.*, No. A2204680 (Hamilton Cty. Ct. Com. Pl. 2023)). Freight Tec moved to dismiss that action for lack of personal jurisdiction and failure to state a claim. (Doc. 10, ¶ 34, #158).

Perhaps belying its tacit assertion that it was "unable to file" a complaint without the discovery, *see* Ohio Rev. Code § 2317.48, Integrity then filed a second action on February 24, 2023, asserting substantive claims for relief and adding a former employee, Brad Borstelmann, as a defendant. (Compl., *Integrity Express Logistics, LLC v. Bradford R. Borstelmann, et al.*, No. A2300795 (Hamilton Cty. Ct. Com. Pl. 2023)). Freight Tec removed that second action on March 22, 2023. (Doc. 1). After Freight Tec did so, Integrity voluntarily dismissed its state court petition for discovery. (Doc. 10, #158). Integrity then amended its complaint in this Court, dropping Borstelmann as a defendant and asserting claims against John Does 1–4, the four Integrity employees that "Jordan Reed" said had joined Freight Tec. (*Id.* at #150).

In its Amended Complaint, Integrity asserts four claims against Freight Tec:[4] (1) misappropriation of trade secrets in violation of Ohio law, (2) violation of the federal Defend Trade Secrets Act, (3) tortious interference with contracts, and (4) tortious interference with business relations. (*See id.* at #164–69). Freight Tec now

---

[4] Integrity's claims against John Does 1–4 are not relevant to Freight Tec's motion to dismiss.

4

moves to dismiss for lack of personal jurisdiction, claiming that Ohio's long arm statute does not extend to its conduct, Integrity has not established minimum contacts with Ohio, and Integrity's claims do not arise out of Freight Tec's conduct in Ohio. (*See generally* Doc. 17). Integrity responds by arguing that the Court has jurisdiction over Freight Tec, but alternatively requests that the Court order limited jurisdictional discovery to help resolve the issue. (Opp'n, Doc. 19, #294–95).

## LEGAL STANDARD

When considering a motion to dismiss for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2), the Court may (1) "determine the motion on the basis of affidavits alone"; (2) "permit discovery in aid of the motion"; or (3) "conduct an evidentiary hearing on the merits of the motion." *Chulsky v. Golden Corral Corp.*, 583 F. Supp. 3d 1059, 1069 (S.D. Ohio 2022) (quoting *Malone v. Stanley Black & Decker, Inc.*, 965 F.3d 499, 505 (6th Cir. 2020)). Deciding whether to grant discovery before ruling on a Rule 12(b)(2) motion is within the Court's discretion. *Burnshire Dev., LLC v. Cliffs Reduced Iron Corp.*, 198 F. App'x 425, 434 (6th Cir. 2006). While courts should grant discovery when necessary for a plaintiff to establish his claim, a plaintiff may not engage in a fishing expedition untethered from the legal claims at issue. *Anwar v. Dow Chem. Co.*, 876 F.3d 841, 854 (6th Cir. 2017). Accordingly, "jurisdictional discovery requests must relate to jurisdictional questions," and must comply with Federal Rule of Civil Procedure 26's proportionality requirement. *Fleites v. MindGeek S.A.R.L.*, No. 2:21-04920, 2023 WL 3526180, at *1 (C.D. Cal. Apr. 7, 2023).

5

**LAW AND ANALYSIS**

"The Fourteenth Amendment's Due Process Clause limits a state court's power to exercise jurisdiction over a defendant." *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1024 (2021). And, while this case is now in federal court rather than state court, "[f]ederal courts ordinarily follow state law in determining the bounds of their jurisdiction over persons." Daimler AG v. Bauman, 571 U.S. 117, 125, (2014); *see also* Fed. R. Civ. P. 4(k)(1)(A) (service of process is effective to establish jurisdiction over a defendant "who is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located").

Under the Fourteenth Amendment, before a state can exercise personal jurisdiction over a defendant, the requirements for either "general" personal jurisdiction or "specific" personal jurisdiction must be met. *See Bristol-Meyers Squibb Co. v. Superior Ct. of Cal.*, 582 U.S. 255, 262 (2017). "General" personal jurisdiction only exists where the defendant is "at home"—or, as applied to a corporate defendant, its place of incorporation or its principal place of business. *Ford Motor*, 141 S. Ct. at 1024.[5] Those strictures are not met here.

"Specific" personal jurisdiction, on the other hand, exists wherever a defendant maintains "certain minimum contacts … such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Walden v. Fiore*, 571 U.S. 277, 283 (2014) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316

---

[5] Except, of course, where consent or a consent-equivalent is involved. *See Mallory v. Norfolk S. Ry. Co.*, 600 U.S. 122, 128–34 (2023).

6

(1945)). Those contacts must be purposeful, not "random, isolated, or fortuitous." *Ford Motor*, 141 S. Ct. at 1025 (citation omitted). That is, the defendant must have purposefully availed himself of the privilege of conducting activities in the forum state. *Id.* at 1024–25. But more than that, when a plaintiff sues a defendant asserting specific jurisdiction, he must allege the defendant's contacts with the forum gave rise to, or at least relate to, the suit. *Id.* at 1025.

The pleadings contain very little evidence of Freight Tec's contacts with Ohio at all, much less any contacts which gave rise to, or even relate to, Integrity's suit. While Integrity does allege that Freight Tec sends freight loads to Ohio, (*see* Doc. 10, ¶ 10, #153), Freight Tec counters that its Ohio business dealings do not relate to this suit because its freight brokerage *services* in Ohio in no way gave rise to its recruiting of Integrity's *employees*. (Doc. 17, #267–68).

That leaves the purportedly tortious conduct at issue—Freight Tec's communication and recruitment of Integrity's employees. Integrity's amended complaint does not allege that such communications occurred in Ohio or that the recruited employees are from Ohio. This is not because Integrity admits that no such conduct took place in Ohio, though. Rather it is because Integrity does not know where the conduct occurred. And Integrity cannot know that information because it does not even know the identity of the recruited employees.

What Integrity does know, however, is that an agent of Freight Tec, "Jordan Reed," likely knows the identity of the recruited employees. This allegation satisfies the Court that limited jurisdictional discovery could be helpful in assessing personal

7

jurisdiction and will not turn into a fishing expedition. And, the old saw that "a federal court always has jurisdiction to determine its own jurisdiction," *United States v. Ruiz*, 536 U.S. 622, 628 (2002), in turn means that "[d]istrict courts have the power to order the discovery of facts necessary to determine their jurisdiction over the merits." *Aviation One of Florida, Inc. v. Airborne Insurance Consultants (PTY), Ltd*, 722 F. Appx' 870, 878 (11th Cir. 2018).[6] Accordingly, the Court orders that the parties shall engage in limited discovery, the scope of which will be limited to one interrogatory served by Integrity on Freight Tec asking Freight Tec to provide, based

---

[6] As it relates to personal jurisdiction, a court's power to order discovery flows not only from its inherent power to assess its own jurisdiction, but also rests on the party's choice to make a limited appearance for purposes of challenging such jurisdiction. In "voluntarily" appearing to assert that defense, the party constructively waives any challenges to the procedural rules the Court employs to make that decision. *See Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 706 (1982) (upholding sanctions for failure to comply with a personal jurisdiction discovery order under a theory of constructive waiver). But this power is not limitless. The Court's authority is constrained both by governing procedural rules, *see* Fed. R. Civ. P. 26(b) (requiring discovery to be "proportional to the needs of the case"), and the nature of the waiver.

To expand on that a bit, the Supreme Court in *Ins. Corp. of Ireland* held that the reason that imposing sanctions for failing to comply with jurisdictional discovery did not offend due process was because of the preexisting legal presumption that "the [defendant's] refusal to produce evidence material to the administration of due process was but an admission of the want of merit in the asserted defense." 456 U.S. at 705 (citation omitted). In this manner, the "behavior of the defendant" operated as a constructive waiver of personal jurisdiction because the defendant made a special appearance to contest personal jurisdiction but refused to assist the court in resolving that dispute. *Id.* at 706. But this Court can envision various scenarios where a defendant is not "refus[ing] to produce evidence" wholesale, but simply resisting the scope of a discovery order. In such a case the "behavior of the defendant" may not allow for an adverse jurisdictional inference to be drawn, and the defendant's special appearance may not be characterized as a constructive waiver of his "liberty interest." *See id.* at 703–06.

In sum, whether framed in terms of inherent power or constructive waiver, courts may not have unlimited power to order discovery from parties as to whom jurisdictional issues have yet to be resolved. That said, ascertaining the outer boundaries of that power is not necessary here, as the discovery the Court is ordering—identifying four current or former employees— falls well within any reasonable conception of what a court's power to order such discovery may be.

8

on the facts to known to its agents or employees, the identities of John Does 1–4, the employees that Freight Tec has hired from Integrity as described in the message from "Jordan Reed."

## CONCLUSION

For the reasons stated, the Court **DENIES** Freight Tec's motion to dismiss for lack of personal jurisdiction (Doc. 17) **WITHOUT PREJUDICE** and gives leave to re-file after limited discovery. The Court also **ORDERS** discovery in compliance with this opinion.

**SO ORDERED.**

October 19, 2023
**DATE**

**DOUGLAS R. COLE**
**UNITED STATES DISTRICT JUDGE**